# UNITED STATES DISTRICT COURT
## for the
### EASTERN DISTRICT OF WISCONSIN

*In the Matter of the Search of*

The premises located at 2839 South Waukesha Road, West Allis, Wisconsin, including the main residence and outbuildings, which premises is more particularly described in **Attachment A** to this application for warrant, and incorporated by reference

)
)
)
)
)
)
)

Case No. 11-M-526

## APPLICATION & AFFIDAVIT FOR SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property*(identify the person or describe the property to be searched and give its location)*: The premises located at 2839 South Waukesha Road, West Allis, Wisconsin, including the main residence and outbuildings, which premises is more particularly described in **Attachment A** to this warrant, and incorporated by reference,

located in the Eastern District of Wisconsin, there is now concealed *(identify the person or describe the property to be seized)*:

See **Attachment B**, "Items To Be Seized," which is incorporated by reference,

The basis for the search warrant under Fed. R. Crim. P. 41(c) is which is (check one or more):

☒ Evidence of a crime;
☐ contraband, fruits of a crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

Title 18, United States Code, Section 1001.

The application is based on these facts:

☒ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature
Name and Title: __Brian Due, FBI Special Agent__

Sworn to before me, and signed in my presence.

Date September 27th, 2011 at 2:10 PM

_____
Judge's signature

City and state: Milwaukee, Wisconsin

THE HONORABLE WILLIAM E. CALLAHAN.
United States Magistrate Judge
*Name & Title of Judicial Officer*

## ATTACHMENT A: LOCATION TO BE SEARCHED
### 2839 South Waukesha Road, West Allis, Wisconsin

The premises located at 2839 South Waukesha Road, West Allis, Wisconsin, which includes a main residence and two outbuildings. The main residence is a two-story, single-family structure. The exterior of the first floor of the residence is tan brick or stone. The exterior of the second story is white siding. The main entrance to the residence is located in the middle of the front of the building and the numerals "2839" are displayed vertically to the right of the front door. The first outbuilding is a barn located southwest of the residence. The barn has a dark, shingled roof and a tan first floor exterior. A second outbuilding is located northwest of the residence. The second outbuilding is a single-story, rectangular structure that appears to be a garage or sided pole barn. It has a grey roof and a beige or light-colored exterior with white doors.

## ATTACHMENT B: ITEMS TO BE SEIZED

### 2839 South Waukesha Road, West Allis, Wisconsin

The items described below, which constitute evidence of violations of federal law, including violations of Title 18, United States Code, Section 1001:

1. Any of the items described in the attached list, which was prepared by the F.B.I. and U.S. Marshal's Service, identifying property previously observed at Sachdeva's residence and believed to have sufficient value to justify forfeiture to the United States;

2. Records reflecting the sale or consignment for sale of items consistent with those described in the attached list; and

3. Purses and other items of women's clothing to which price tags are still attached.

1

| ROOM | Item # | Type | Description | Est Value | Retail Value |
|---|---|---|---|---|---|
| | | | | | |
| Outside - Front | 11 | Statue | Bronze Lady Holding Child | | |
| | | Statue | 4 Bronze Dragons | | $13,600 |
| | | | | | |
| Drawing Room | | Mirror | Jay Strongwater mirror (approx. 1 1/2 ft. - 2 ft.) | | $5,000 |
| | | Statue | Numerous Hindu gods & dragon | $100+ ea. | |
| | | Books | 1st Edition sets | | |
| | | | | | |
| | | | | | |
| Front Entry | 9 | Vases | 2 large (approx. 4') white ceramic vases | $400 ea. | $800-$1,000 |
| | | Statue | Lladro - Lady with Harp (approx. 2 1/2 ft.) | $2,000-$3,000 | |
| | | Statue | Buddha heads | $100-$200 | |
| | | Statue | 4 Lladro - Ganeshes | $200 ea. | |
| | | Artwork | Large installation art above entry - unknown artist (from Cranston's) | | |
| | | | | | |
| Living Room | | Statue | Gold Buddha (approx. 3 ft.) | $500 | |
| | | Decorative | Bronze Pierced Pot | $500 | |
| | | Decorative | Burmese Lacquer stacking pot | $500 | |
| | 15 | Lamp | Brown Metal floor lamp with brown damask shade | $300 | |
| | 2 | Clothing | 2 boxes of shoes fr Piccardy / stack of clothing / Nambe' silver bowls | | |
| | | | | | |
| Dining Room | 6(a) | Wall Art | 9 blue ceramic tiles on dining room wall | $100 ea. | |
| | 5 | Fountains | 2 stainless steel indoor fountains | $1,000 ea. | |
| | 12 | Candlesticks | 2 sets of 3 silver plated candlesticks - made in India | $200 ea. | |
| | | Statue | 4 Lladro - Ganeshes | $200 ea. | |
| | | Statue | Lenox 'Durga' - Hindu goddess of strength | $300 | |
| | | | | | |
| Family Room Entry | | Decorative | Jay Strongwater sconces | | $2,000 ea. |
| | | Decorative | Jay Strongwater picture frames | $200 ea. | |
| | | Decorative | White glass elongated bowl - no artist | | |
| | | | | | |
| Family Room | | Decorative | Jay Strongwater picture frames | $200 ea. | |
| | | Statue | Lord Ganesh statue by Lenox | | |
| | | Statue | Gold Buddha / Hindu god | $100 | |
| | | Statue | Stone Buddha head | | |
| | | Statue | Wooden Buddha bust | | |
| | | Glassware | Etched colored glassware & barware by Michael Weems | | $100 ea. |
| | | | | | |
| Kitchen - Eat-in | | Paintings | 2 Large (approx. 3' x 4') soft-focus landscapes | | |
| | | | | | |
| Kitchen | | Vases | 3 Red glass vases | $200 ea. | $800 ea. |
| | | Artwork | 3 red mosaic tiles entitled "Allegre" by Filipetti | | |
| | | | | | |
| Master Bedroom | 14 | Furniture | Tapestry chaise lounge chair | | |
| | | Furniture | Cream leather Art Deco style settee | | |
| | | Mirror | Floor standing three part decorative mirror | | |
| | 15 | Furniture | Decorative Ginko Leaf metal bedside lamp | | |
| | | Decorative | 2 Ginko Leaf picture frames (matches above lamp) | | |
| | 15 | Furniture | Decorative Umbrella bedside lamp | | |
| | | Statue | Lladro - Mother & Child | | |
| | | Clothes | Stack of clothing on floor | | |
| | | Decorative | 2 Lalique crystal swans | | |
| | | Statue | Silver African Warrior Princess | | |
| | | | | | |
| Master Bathroom | | Statue | Lladro - Woman with flowers | | |
| | | | | | |
| Staircase | | Statue | 3 Lladro statues - Buddhas & Ganesh (@ mid landing) | | |
| | | Statue | Large Bronze Ganesh (top of stairs) | | |
| | | Prints | 1 Large (approx. 4'x6') & 1 small (approx. 2'x3') Boulanger-style paintings | | |
| | | Statue | Lladro - Indian couple | | |
| | | | | | |
| Basement Stairs | 6(b) | Wall art | 12 multi-colored ceramic tiles (from Cranston's) | $100 ea. | |
| | | | | | |
| Bar Area | 7 | Artistic Bowls | Orange woven glass bowl; Nambe' crystal bowl; Large Plate & vase signed by Evan; Large red pot | | |
| | | Statue | Lladro - Man carrying woman | | |
| | | | | | |
| Basement | | Linens | 2 Bags and a bin of SFERRA Itallian sheets & linens | | $900 ea. |

| ROOM | Item # | Type | Description | Est Value | Retail Value |
|------|--------|------|-------------|-----------|--------------|
| | | Furniture | 2 Maitland & Smith antique Pembrook inlaid drop-leaf tables (matching bureau @ Cranton's) | | |
| | | Glassware | St. John Home & Arthur Court stemware | | |
| | | | | | |
| Basement Bedroom | | Furniture | Metalwork Flower motif bed | $600-$800 | |
| | | Furniture | Wooden Bed Stool/step | $100 | |
| | | Decorative | 10 Tall glass candlesticks | | |
| | | | | | |
| Basement Bathroom | | Statue | Lladro - Woman with Jar & Flowers | | |
| | | | | | |
| Backyard | 3 | Furniture | Heavy sculpted grouping - 2 chairs & 1 table | | |
| | | Furniture | 2 Patio sets (table & 4 chairs), 4 barstools, 2 chaise lounge chairs | | |
| | | Statues | 2 bronze statues | | |
| | | | | | |
| Garage | | Housewares | Flatware, silverware, small kitchen appliances, china, housewares, serving pieces, decorative items, Le Crueset cookware, etc. | | |

**AFFIDAVIT**

I, Brian K. Due, being duly sworn on oath, state as follows:

**I. Background, Training, & Experience**

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") of the United States Department of Justice and I have been so employed for 24 years. I am currently assigned to the Milwaukee Division's White Collar Crime squad. As part of my duties, I investigate violations of federal criminal laws, particularly those laws found in Title 18 of the United States Criminal Code.

2.      During my 24 years as an FBI Special Agent, I have participated in: (a) numerous wire fraud, mail fraud, and bank fraud investigations, warrants, and seizures; (b) the execution of numerous search warrants for documents, records, and proceeds from illegal activities; (c) the subsequent investigations and analysis of evidence seized pursuant to those warrants; and, (d) the interviewing of defendants, witnesses, informants, and other persons who may have had personal knowledge of the distribution and concealment of proceeds derived or gained from illegal activities.

3.      This affidavit is submitted in support of my application for a search warrant for the premises located at 2839 South Waukesha Road, West Allis, Wisconsin, including a main residence and two outbuildings. The main residence is a two-story, single-family structure. The exterior of the first floor of the residence is tan brick or stone. The exterior of the second story is white siding. The main entrance to the residence is located in the center of the front of the building and the numerals "2839" are displayed vertically to the right of the front door. The first outbuilding is a large barn located southwest of the residence. The barn has a dark, shingled roof and a tan exterior. A second outbuilding is located northwest of the residence. The second outbuilding is a single-story,

rectangular structure that appears to be a garage or sided pole barn. It has a grey roof and a beige or light-colored exterior with white doors. Public source records indicate that the property is owned by Karol Kulas and Kristine Kulas. However, investigation has determined that the premises is currently occupied by Kristine Kulas's son, Adam Burback.

4.      Because this affidavit is submitted only for the limited purpose of securing a search warrant, I have not set forth each and every fact known to me concerning this investigation. I have included what I believe are facts sufficient to establish probable cause for the search warrant sought. I have also included any material that I believe is exculpatory and of which I have knowledge. All of the information contained herein is based upon my personal knowledge and investigation, or upon information supplied to me by other law enforcement officers or citizen witnesses, all of whom I believe to be truthful and reliable. Everything set forth herein is true and correct to the best of my knowledge and belief.

## II. Background of Investigation

5.      I was previously assigned to the investigation and prosecution of Sujata Sachdeva. On January 10, 2010, Sachdeva was charged in a six-count indictment returned in this district. The indictment charged Sachdeva with six counts of using interstate wire communications to carry out a scheme to defraud her former employer, Koss Corporation, in violation of 18 U.S.C. § 1343 ("wire fraud"). The indictment alleged that, during the period from at least January 2004 through December 2009, Sachdeva used her position at Koss to embezzle more than $31 million, which she used to purchase personal items, including women's clothing, furs, purses, shoes, jewelry, automobiles, china, statues, and other household furnishings.

Case 2:11-mj-00526-WEC      Filed 09/27/11      Page 7 of 21      Document 1

6. The indictment included a forfeiture provision that sought the forfeiture of any property, real or personal, that constituted or was derived from proceeds traceable to Sachdeva's fraud.

7. On January 29, 2010, Sachdeva entered into an agreement with the government entitled First Agreement Not to Impair or Dissipate Assets and to Cooperate in the Seizure of Assets That Might Be Subject to Forfeiture. Pursuant to this agreement, Sachdeva agreed not to sell, transfer, give away, borrow against, or remove with intent to conceal, any personal property that might reasonably have a resale value of $100 or more, without both conferring with the United States Attorney's Office and obtaining the district court's approval to do so. Sachdeva also agreed to disclose to agents of FBI the location of any places, besides her residence, where she was currently storing any personal property.

8. This agreement was filed with the district court and expressly made part of the conditions of Sachdeva's pretrial release.

9. In February 2010, representatives of the FBI and U.S. Marshal's Services (USMS) inspected Sachdeva's residence in Mequon, Wisconsin, to identify items of personal property that appeared to be of sufficient value to justify seizure and forfeiture to the United States as part of Sachdeva's prosecution. The items identified included vases, statues, works of art, mirrors, lamps, tables, miscellaneous furniture, candlesticks, and home furnishings. The agents also took photographs of the identified items.

10. Based on that inspection, the government prepared a list of 61 items (although many of the listed items consisted of multiple pieces such as sets of candle sticks, picture frames, and related statues or pieces of art) that were located at the residence and which the government intended

Case 2:11-mj-00526-WEC    Filed 09/27/11    Page 8 of 21    Document 1

to seize and forfeit.   As is relevant here, one of the listed items was a "tapestry chaise lounge chair" that was located in the master bedroom of the residence.  The government provided this list to counsel for Sachdeva and indicated that the listed items should be turned over to the government to be forfeited.

11.      On July 17, 2010, the government filed a plea agreement that had been reached with Sachdeva. Under the terms of her plea agreement, Sachdeva agreed to plead guilty to the six wire fraud charges set forth in the indictment.  Sachdeva also agreed to the entry of a money judgment of forfeiture against her equal to the amount of proceeds she obtained as a result of her offense, which the government estimated to be $34 million.

12.      As part of this plea agreement, Sachdeva acknowledged that the money judgment anticipated to be entered against her would substantially exceed her net worth.  As a result, Sachdeva expressly agreed that, any and all property in which she had any interest was subject to forfeiture to the United States either directly, as property constituting or traceable to proceeds of her wire fraud scheme, or indirectly, as substitute assets.

13.      Pursuant to a second non-dissipation agreement, Sachdeva also agreed to provide the United States with a list of all of her assets having a value greater than $1,000.  On November 17, 2010, Sachdeva executed and provided to the government a Financial Disclosure Affidavit purporting to disclose to the government any real or personal property having a value of $1,000 or more, in which she had an ownership interest, other than what had already been disclosed to the government.

14. On that same day, the Honorable Lynn Adelman, U.S. District Judge, sentenced Sachdeva to imprisonment for a period of 132 months (11 years) and ordered her to make restitution to Koss in the amount of $34 million.

15. Judge Adelman allowed Sachdeva to remain free on bond until she was required to surrender to the Bureau of Prisons to begin serving this sentence. On or about February 1, 2011, Sachdeva surrendered to the BOP in Danbury, Connecticut, to begin serving her sentence.

16. As detailed below, my investigation has revealed that Adam Burback removed items from Sachdeva's residence that were subject to forfeiture and, in an attempt to conceal ths conduct, made false statements to a federal agent concerning his possession of this property.

### III. Basis for Facts Establishing Probable Cause

#### *January 28, 2011 interview of Burback*

17. On January 28, 2011, I interviewed Burback at the FBI's Milwaukee Field Office. Burback indicated he resided at 2839 South Waukesha Road, West Allis, Wisconsin. Burback told me he met Sachdeva five or six years ago and has participated in some of Sachdeva's fund raising events over the years. He regularly visited Sachdeva at her residence.

18. Burback stated that, about three months earlier, Burback and Sachdeva were at a mutual friend's house when Sachdeva was discussing that she needed to move items out of her residence before she reported to prison. Burback offered to help Sachdeva with the task.

19. According to Burback, he met with Sachdeva at her residence on January 5, 2011, and offered to transport items Sachdeva intended to mail to her mother. Burback took the items to the post office and mailed them to Sachdeva's mother. The items included a set of sheets, about a dozen photo albums, a couple of picture frames, and five or six articles of clothing, which consisted

primarily of sweat pant suits. By that point in time, Sachdeva had already packed up items she wanted placed in storage and set them aside in her residence. Burback indicated that Sachdeva's attorney had provided a list of items that the FBI was interested in and had made Sachdeva aware that those items were not to be moved from the residence.

20. During the interview, Burback stated that, the following day (January 29, 2011), he intended to help Sachdeva move some furniture to a storage facility owned by friends of Sachdeva. The friends offered to let Sachdeva store her furniture and personal effects until she was released from prison. The items Burback planned to move included a bed, a bedroom set, a small glass table with four chairs from the library area, a couch, a set of pots and pans, dishes, silverware, and a dining room table and chairs. Burback assured me that he would not be moving the items that were on the list the government previously provided to Sachdeva's lawyer.

21. Burback stated he previously transported a couple of boxes of children's clothing and a couple of bags of stuffed animals to Goodwill at Sachdeva's request.

### *February 14, 2011 interview of Burback*

22. On February 14, 2011, I again interviewed Burback. During that interview, Burback described events that occurred on January 28, 2011, after I had interviewed him. Burback stated he was present at Sachdeva's residence on January 28, 2011, when other acquaintances of Sachdeva were helping her collect household items that could be disposed of or moved to storage. In this affidavit, Sachdeva's acquaintances are referred to by their initials.

23. According to Burback, prior to his arrival at Sachdeva's residence, an acquaintance of Sachdeva's, K.M., delivered a list of items that K.M. received from Sachdeva's attorney. The list

Case 2:11-mj-00526-WEC    Filed 09/27/11    Page 11 of 21    Document 1

contained household items that Sachdeva had been instructed not to sell, give away, or otherwise dispose of, because the government had indicated the items might have forfeiture value.

24.     I showed Burback a copy of the list of 61 items that had been prepared by the FBI and the USMS in February 2010.  Burback confirmed that this was the list Sachdeva received from K.M. and was reviewing on January 28, 2011.  Burback indicated, however, that this list was different from the list of items that Burback described when I spoke to him on January 28, 2011.

25.     Burback told me that, as Sachdeva and her friends were going through the list, it became apparent to him that Sachdeva had been gifting items to people during the previous couple of days. Sachdeva repeatedly stated "I sent this to [name]" or "I gave this to [name]." According to Burback, Sachdeva seemed dazed and "out of it" while they reviewed the list.

26.     Burback indicated that, as Sachdeva and her friends reviewed the list, it also became apparent to him that one of Sachdeva's friends, C.S., thought Burback had removed or stolen some of the items on the list.  At one point, C.S. told Burback that if he took any of the items on the list, he needed to bring them back to the residence.  Burback denied taking any of the listed items. It was Burback's understanding that when he left Sachdeva's residence, C.S. and K.M. would be handling the disposition of any items that the movers did not take from the residence on Saturday, January 29, 2011.

27.     Burback stated that he was not at Sachdeva's residence at any point on January 29, 2011.  He does not know if anyone else was at Sachdeva's residence that day.  Burback thinks Sachdeva's husband may have changed the locks at the residence on or about January 29, 2011.  To Burback's knowledge, no items were moved from Sachdeva's residence to a storage facility on January 28, 2011. The original plan was to move items from Sachdeva's residence to a storage area

Case 2:11-mj-00526-WEC     Filed 09/27/11     Page 12 of 21     Document 1

owned by an acquaintance of Sachdeva's (W.P.). However, Burback spoke to W.P. about a day after Sachdeva reported to prison, and W.P. said no items had been delivered to her place.

28. According to Burback, Sachdeva told him that she gave away "a ton of stuff" and that "a ton of stuff" went to Goodwill.

29. Burback stated Sachdeva gave him about 15 boxes of clothing items. The clothing items were items remaining in Sachdeva's closet after the FBI executed its search warrant. To Burback's knowledge, none of the items contained price tags. Burback stated that he thought a lot of the clothing was purchased at TJ Maxx or Marshalls. Sachdeva gave Burback a set of used dishes that had been purchased at Crate and Barrel, some used glasses, and some used pots and pans. Sachdeva asked Burback to hold these items until she was released from prison, so she would not have to repurchase the items after her release.

30. During the February 14, 2011, interview, Burback reviewed the list of 61 items that the government identified as subject to forfeiture. Burback identified those items from the list that he believed were still at Sachdeva's residence when he was last there on January 28, 2011; those items he recognized but did not recall seeing at the residence; and those items he was uncertain as to whether they were at Sachdeva's residence.

31. Burback stated he was not involved in moving any items from Sachdeva's residence other than those described above.

### *February 22, 2011 interview of Sachdeva's husband*

32. On February 22, 2011, I interviewed Sachdeva's husband, who is a medical doctor (hereinafter referred to as "Dr. Sachdeva"). Dr. Sachdeva stated that he and his attorney were at his residence on January 27, 2011, and noticed that the following items were missing:

a. One of three bronze dragon statues that had been located outside of the garage. Dr. Sachdeva asked his wife about these items and she alternated between saying that all the dragons were there, to stating, "Yeah, so what .... I stole it."

b. Two flat-screen wall-mounted television sets were missing from their children's bedrooms. The TVs were about 42" in size. Dr. Sachdeva recalled in November, 2010, he noticed one of the TVs was missing, at which time he asked his wife about it. She told him it had fallen, and that it broke. When he asked her again on January 27, 2011, she told him she did not know where it was. The TVs may have been made by Samsung or LG.

c. A 1999 Mercedes Sports Utility Vehicle was also missing. Dr. Sachdeva asked his wife where the vehicle was and his wife told him she gave it to Adam (Burback), because he was driving her to errands and was getting the vehicle repaired.

33. Dr. Sachdeva did notice that the TV located in his bedroom was still present on January 27, 2011.

34. I provided Dr. Sachdeva with a list of the 61 items previously located in the Sachdevas' residence that the government designated as being subject to forfeiture. Dr. Sachdeva identified numerous items from the list that were no longer at the residence.

35. Dr Sachdeva further advised that, as of February 22, 2011, all four television sets were missing from the house. There were also computers missing, as well as video game systems. Several household items that had been located in the garage appeared to be missing.

Case 2:11-mj-00526-WEC    Filed 09/27/11    Page 14 of 21    Document 1

36. According to Dr. Sachdeva, when he spoke to his wife on January 27, 2011, she told him that a U-Haul truck would be coming to the residence to pick up the items that would be going to storage. He spoke to her telephonically the next day, while he was traveling to Chicago, and she told him the truck would be coming during the morning of Saturday, January 29, 2011. Dr. Sachdeva called his wife during the morning of January 29, 2011, and told her not to remove anything from the house. She agreed not to have anything removed.

37. Dr. Sachdeva and his attorney went to the house during the afternoon of January 29, 2011, after Dr. Sachdeva returned from Chicago. Dr. Sachdeva called a locksmith, who met them at the house and changed the locks. Dr. Sachdeva also changed the garage door entrance code. That evening, Dr. Sachdeva's attorney received the list of items that were supposed to remain at the residence. By that time, Dr. Sachdeva's bedroom TV was gone, along with the Mercedes automobile. Although the TV was gone, the TV mounts were still attached to the wall.

38. While at the residence on January 29, 2011, Dr. Sachdeva also noticed that the door leading to the basement stairway had been removed and one of four appliances that had been located in the basement was missing. The remaining three appliances had been pulled away from the wall, apparently in preparation for removing them as well. The dining room was packed with items. While he was looking through the house, Sachdeva called him on his cell phone. She told Dr. Sachdeva that she sent some things to be stored at W.P.'s house. However, Dr. Sachdeva called W.P., and she said Sachdeva had called her to ask if things could be stored there, but nothing was ever moved to W.P.'s property.

Case 2:11-mj-00526-WEC    Filed 09/27/11    Page 15 of 21    Document 1

### March 30, 2011 interview of Sachdeva

39.     On March 30, 2011, I interviewed Sachdeva at the Danbury Federal Correctional Institution in Danbury, Connecticut. During the interview, Sachdeva was shown a spreadsheet listing the 61 items the government sought to recover from Sachdeva's residence. Sachdeva stated she believed the list was prepared by the FBI pursuant to a walk-through at her residence by FBI and U.S. Marshal's Service personnel not long after she was arrested. Sachdeva was in possession of the list early on and, after receiving the list, Sachdeva added items she believed were valuable to the list. She provided the expanded list to her attorney.

40.     Sachdeva stated she did not give anyone anything that was on the list - not one item - to include friends and family members. Sachdeva advised there were times when Burback and a second individual she also suspected of stealing items, A.C., were at her house packing household items. According to Sachdeva, she would go to bed while Burback and A.C. were still packing. Days later, Sachdeva would notice that things were missing from the house that she would not have allowed them to pack. For example, Burback and A.C. expressed interest in a Jay Strongwater mirror (which, according to the list, had been located in the drawing room). They told her it was something that should be put in storage. She told them not to remove it from the house, because it was on the government's list. Sachdeva then went to bed, and a day or two later, she noticed the mirror was missing. When she confronted them about the issue, A.C. said, "Sue, we took it because we think you should keep it for you. If the feds need it, we can just get it from Adam's [Burback] uncle's storage."

41.     According to Sachdeva, everything moved out of the house by Burback and A.C. was supposed to be placed in Burback's uncle's storage unit, or moved to property owned by members

of Burback's family. Burback told her that he and his family owned nine acres of land near his (West Allis) residence, and there was a lot of space on that property where he could store things. Burback began moving things from her residence shortly after she met him, which she believes was sometime around mid to late October, 2010.

42. Sachdeva recalled during the evening of January 28, 2011, an inventory was taken in her house of items that were of interest to the government. The inventory was being handled by C.S., K.M., and Sachdeva. When Sachdeva saw how many items on the list were missing from her house, she told Burback that she would personally go to the storage unit that night to bring the items back. Burback declined her suggestion, and never offered to bring the items back. Sachdeva recalled that Burback was very nervous that evening. The next morning, A.C. called Sachdeva and started screaming at her. He told her that she put Burback in a bad situation, and that Burback was upset that he was being questioned in front of others. Earlier during the evening of January 28, 2011, A.C. walked into Sachdeva's house, heard the group discussing getting a list of items from Sachdeva's attorney, and immediately said, "I gotta go."

43. According to Sachdeva, A.C. and Burback both told her that they would hold onto her personal and household items until she was released from prison. Sachdeva never discussed with A.C. or Burback the possibility of selling any of the items.

44. Sachdeva recalled sometime around November, 2010, she was having dinner with Burback when he pulled 60,000 rupees (Indian currency) from a black YSL bag that he frequently carried around, and said, "Look what I found." Sachdeva estimated the 60,000 rupees were worth about $2,000. Burback had taken the rupees from a purse that had been stored under Sachdeva's master bedroom sink. The purse belonged to her husband's now-deceased mother. Sachdeva told

Burback that the rupees did not belong to Sachdeva or to Burback, and she told him to put them back where he found them. Burback told her it cost a lot of money to put gas in the cars that Burback and A.C. were using to run errands on Sachdeva's behalf. Burback told her he knew of a place near the airport where he could exchange the rupees for U.S. dollars.

45. Sachdeva stated the only items she sent to Goodwill after her arrest were clothing items that belonged to her kids. Sachdeva never went to the post office with Burback or with A.C.

46. Sachdeva identified numerous items on the FBI's list of items to be turned over to the government for forfeiture that she suspected Burback and A.C. packed up and removed from her residence.

47. Sachdeva identified those items from the list that she believes were still at her house when she left for prison. Among these items Sachdeva identified as still being at her residence when she left for prison was the tapestry chaise lounge chair.

48. Sachdeva advised A.C. and Burback also removed switch plates off the walls at her residence and took them from the house.

49. Sachdeva suspected A.C. and Burback took a lot of her husband's clothing from her residence. A couple of times, she caught them walking down the stairs at her house with his suits in their arms. She told them to put them back, and they joked, "Oh, Sue's getting mad again." Once, she caught A.C. and Burback taking a TV from Ramesh Sachdeva's bedroom. She yelled at them to take the TV back upstairs. Burback responded, "We're going to take it - what are you going to do?" Sachdeva got upset and started crying, at which point A.C. told Burback they needed to take the TV back to the room. Sachdeva was not aware that three other TV sets were missing from the house when she reported to Danbury.

Case 2:11-mj-00526-WEC    Filed 09/27/11    Page 18 of 21    Document 1

### April 12, 2011 interview of Burback

50.    On April 12, 2011, I again interviewed Burback. I contacted Burback at his home located at 2839 South Waukesha Road, West Allis, Wisconsin. The premises consists of three buildings, a main residence and two out buildings, all of which are more particularly described above in paragraph 3 of this affidavit.

51.    On this occasion, I confronted Burback with allegations that he had removed items subject to forfeiture from Sachdeva's residence. Burback denied removing or possessing any of the items on the list that K.M. had provided to Sachdeva on January 28, 2011.

### September 2011 interviews of K.B.

52.    On September 19, 2011 and September 20, 2011, I interviewed K.B., who had visited Burback's residence at 2839 South Waukesha Road in West Allis on September 16, 2011. K.B. was at Burback's residence to assist a photographer who was conducting a photo shoot for a magazine. The photo shoot occurred in the yard area behind Burback's residence. During the course of the photo shoot, there were times when K.B. was allowed access to Burback's house, in order to assist a model who was involved in the photo shoot. While in the residence, K.B. observed the living room, kitchen, and bathroom areas. I showed K.B. photographs of items that were formerly located in the Sachdevas' residence. These photographs had been taken by the FBI and USMS at the time of the inspection of the residence in February 2010. The photographs depict the 61 items that were deemed by the FBI and USMS to be of potential value for forfeiture purposes. K.B. recognized one of the items depicted in the photographs, a tapestry chaise lounge chair, as an item that was located in Burback's living room.

Case 2:11-mj-00526-WEC    Filed 09/27/11    Page 19 of 21    Document 1

53.     K.B. also advised that while she was at Burback's house, Burback displayed an Alexander McQueen purse, with python snake print, that he appeared to retrieve from the second floor area of his house. The purse still had a price tag attached to it. On September 20, 2011, I contacted Sachdeva about the purse. Sachdeva informed me that my description of the purse matches a purse that she kept in her closet at her residence, which had a price tag on it listing a value of about $4,000. Sachdeva told me she did not "gift" the purse to Burback, and was not aware that it was taken from her residence.

54.     K.B. noticed that Burback also had a flat-screen TV mounted to the living room wall, which K.B. estimated to be about 42" in size.

55.     As indicated above, when I interviewed Burback on February 14, 2011, he reviewed all of the items on the list of potentially forfeitable property that had been furnished by K.M. on January 28, 2011, and stated that he had not moved any of the listed items out of Sachdeva's house. He also told me he had no idea whether the tapestry chaise lounge chair was located at Sachdeva's residence.

### September 22, 2011 inspection of Sachdeva's residence

56.     On September 22, 2011, I visited Sachdeva's residence to determine whether any or all of the 61 items identified by the government as subject to forfeiture, as reflected on the list prepared by the FBI and USMS in February 2010, were still located at the residence. While I had not participated in the initial inspection in 2010, during the September 22, 2011 inspection, I was accompanied by an FBI employee who was present during the earlier inspection.

57.     Based on our inspection of Sachdeva's residence, at least 40 of the 61 items previously identified by the government as subject to forfeiture are no longer at the residence. In

particular, the tapestry chaise lounge, which had been located in the master bedroom of the residence, is no longer there.

**IV. Conclusion**

58.     Based on the foregoing, I submit there is probable cause to believe that Adam Burback has made materially false, fictitious, or fraudulent statements or representations to the Federal Bureau of Investigation, in violation of Title 18, United States Code, Section 1001. I also submit there is probable cause to believe that evidence, fruits, and instrumentalities of these crimes (as described in Attachment B: Items to be Seized) may be found at the premises located at 2839 South Waukesha Road, West Allis, Wisconsin, including the main residence and outbuildings.

Case 2:11-mj-00526-WEC     Filed 09/27/11     Page 21 of 21     Document 1